# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

TREASURER OF ROWLEY vs. TOWN OF ROWLEY & others.[1,2,3]

Essex. May 7, 1984. — September 10, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Municipal Corporations,* Treasurer, Officers and agents, Expenditure of money.

A town treasurer is required to pay any bills or payrolls submitted to him with the approval of the town accountant and board of selectmen. [4-8]

The treasurer of a town had no standing to challenge the right of the town's cemetery commissioners and shellfish commissioners to be compensated for services rendered by them as laborers within their respective departments. [8]

CIVIL ACTION commenced in the Superior Court Department on November 2, 1982.

The case was heard by *Peter F. Brady,* J.

---

[1] The town accountant, the town shellfish commissioners, and the town cemetery commissioners.

[2] We acknowledge the filing of an amicus curiae brief by the Massachusetts Collectors and Treasurers Association (association).

[3] The commissioners also filed an action against the treasurer, Cemetery and Shellfish Commissioners of Rowley *vs.* Elizabeth A. George. The judge, at the parties' request, entered a single judgment for both actions. The treasurer appears to have appealed from the judgment only in so far as it pertains to the action in which she was the plaintiff.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Robert I. Kalis* for the plaintiff.

*Arthur K. Ross, Jr.,* Town Counsel, for the defendants.

*Robert J. Ebersole,* for Massachusetts Collectors and Treasurers Association, amicus curiae, submitted a brief.

O'CONNOR, J. Elizabeth A. George, treasurer of the town of Rowley (treasurer), commenced this action in the Superior Court, seeking a declaration under G. L. c. 231A that any payments by her of compensation to the shellfish commissioners and the cemetery commissioners for services rendered during the town's 1983 fiscal year would violate various statutory provisions. She also requested an order enjoining the defendants from signing or attempting to enforce any account, warrant, or similar request or order of payment to the commissioners until statutory requirements for such payments have been met. The parties filed a statement of agreed facts and cross motions for summary judgment. A judge of the Superior Court entered a judgment holding that "the payment of an hourly wage to the Commissioners is lawful and in compliance with any and all provisions of G. L. c. 41, § 108, G. L. c. 268A, § 21A and G. L. c. 44, § 31," and ordering the treasurer to "discharge the duties of her office and distribute all payments to the Commissioners to which they are entitled." The treasurer appealed and we transferred the case to this court on our own motion. We hold that, in the circumstances of this case, the treasurer is bound to make the disputed payments to the commissioners. The basis of our holding, however, is not that the commissioners are entitled to an hourly wage, as was determined by the judge. That is a matter we do not decide. Rather, we conclude that the treasurer is required to pay any bills or payrolls submitted to her with the approval of the town accountant and board of selectmen,[4] and therefore has no standing to challenge the commissioners' rights to the payments.

---

[4] The parties have assumed, as do we, that the 1983 fiscal year payrolls which are the subject of the complaint were approved by the town accountant and board of selectmen.

The town of Rowley has three elected cemetery commissioners and two elected shellfish commissioners. At the 1963 annual town meeting, the town voted "to allow the cemetery commissioners the right to work as laborers at the hourly wage." At the 1964 annual town meeting, the town voted to allow the shellfish commissioners "the right to work as laborers, at the town hourly wage." The parties stipulated "that since 1963-1964, the [commissioners] have employed themselves as laborers by their respective departments," and that after the 1963-1964 votes, "there have been no further votes . . . at any Annual Town Meeting authorizing the Commissioners of either department to employ themselves as laborers."

The parties stipulated further "that the method for obtaining payment of bills or payrolls is as follows: The Town Accountant prepares a Warrant for payment of bills or payroll which have been submitted to him by the various departments; his signature on same indicates approval for payment; that Warrant is then submitted along with vouchers to the Board of Selectmen and they must approve or disapprove same; following the Selectmen's approval and signature, it is then submitted to the Treasurer for payment." We assume that these procedures were followed with respect to the 1983 fiscal year payrolls at issue. See note 4, *supra.*

Prior to the 1982 annual town meeting, the commissioners submitted 1983 fiscal year annual budgets for their respective commissions to the town finance commission. The finance commission recommended approval of these budgets, which were then approved at the annual town meeting. The budgets were approved in the following format:

Shellfish Commission

|                | |
|----------------|---------|
| Wages          | $4,300  |
| Expenses       | $ 700   |

Cemetery Department

|                     | |
|---------------------|---------|
| Wages and Salaries  | $9,585  |
| Expenses            | $2,830  |

In the years following the 1963-1964 votes, "the Shellfish Commission and the Cemetery Department have submitted a budget in the approximate form shown [above]; and payment has been made thereon to the Commissioners through Fiscal Year 1982."

On June 19, 1981, the treasurer suggested in a letter to the board of selectmen that a ruling be obtained from town counsel concerning the method of payment to the commissioners. She stated that "as Treasurer & Collector of the Town, the Town Accountant and I are the target of the State Audits and I want a letter in writing from Town Counsel to have in my files." On June 22, 1981, the town counsel wrote a letter to the chairman of the board of selectmen expressing his opinion that "the town has complied with [G. L. c. 41, § 108]." The town counsel repeated this opinion in a letter to the chairman of the board of selectmen on June 21, 1982.

Since July 1, 1982, the first day of the 1983 fiscal year, however, the treasurer has refused to pay any compensation to the commissioners. She brought the present complaint seeking a declaration that such payment would violate several statutory provisions. On appeal, she first argues that the lump sum appropriation for wages in the annual budget for a commission "is too indefinite to be a valid appropriation" because it "invites self-dealing" and conceals from the public "how much money is paid to the commissioners for their duties as commissioners, and how much is paid to them and others as laborers of the Commissions." Second, she argues that "the lump sum appropriation is illegal under [G. L. c. 41], § 108, which states in part 'the salary and compensation of all elected officers of a town shall be fixed annually by a vote of the town at an annual town meeting.' " She maintains that the town votes in 1963 and 1964 do not satisfy the annual vote requirement of this provision. Finally, the treasurer argues that the 1963 and 1964 votes do not satisfy the 1968 conflict of interest law, G. L. c. 268A, § 21A, which statute requires the approval of an annual town meeting before a member of a municipal commission shall be eligible for appointment to any position under the supervision of such commission. We do not reach the treas-

urer's arguments because we agree with the defendants that the treasurer had no authority to withhold payment on the vouchers presented to her.

The commissioners receive their compensation from the town by submitting the payrolls for their departments to the town accountant. The town accountant approves the payrolls by submitting a warrant for payment, along with vouchers, to the board of selectmen for their approval. Approved vouchers are then presented to the treasurer for payment. This system, which gives the town accountant the power to authorize or disapprove payments, comports with G. L. c. 41, § 56. Section 56 provides that "[t]he town accountant may disallow and refuse to approve for payment, in whole or in part, any claim as fraudulent, unlawful or excessive, and in such case he shall file with the town treasurer a written statement of reasons for such refusal." [5]

The town's method of approving payments also complies with G. L. c. 41, § 52, which provides that "the selectmen in towns . . . shall approve the payment of all bills or pay rolls of all departments before they are paid by the treasurer, and may disallow and refuse to approve for payment, in whole or in

---

[5] General Laws c. 41, § 56, as amended through St. 1977, c. 348, § 1, sets out the following procedure for payment of town monies:

"The selectmen and all boards, committees, heads of departments and officers authorized to expend money shall approve and transmit to the town accountant as often as once each month all bills, drafts, orders and pay rolls chargeable to the respective appropriations of which they have the expenditure. Such approval shall be given only after an examination to determine that the charges are correct and that the goods, materials or services charged for were ordered and that such goods and materials were delivered and that the services were actually rendered to or for the town as the case may be . . . . The town accountant shall examine all such bills, drafts, orders and pay rolls, and, if found correct and approved as herein provided, shall draw a warrant upon the treasury for the payment of the same, and the treasurer shall pay no money from the treasury except upon such warrant approved by the selectmen. . . . The town accountant may disallow and refuse to approve for payment, in whole or in part, any claim as fraudulent, unlawful or excessive, and in such case he shall file with the town treasurer a written statement of the reasons for such refusal. The treasurer shall not pay any claim or bill so disallowed by the town account-ant. . . ."

part, any claim as fraudulent, unlawful or excessive." This provision was enacted in response to the Report of the Joint Special Committee on Municipal Finance, 1913 House Doc. No. 1803, which recommended "[t]hat the auditors in cities and the selectmen in towns be given authority to disallow and refuse to pay any claim against the municipality on the ground that it is fraudulent, unlawful or excessive." *Id.* at 63.

Thus, the Legislature has empowered the town accountant and the board of selectmen to disallow claims against the municipality which appear to be unlawful. This contrasts with the responsibilities of the town treasurer with respect to payments by the municipality: "[h]e shall receive and take charge of all money belonging to the town, and pay over and account for the same *according to the order of the town or of its authorized officers*" (emphasis added). G. L. c. 41, § 35. The Legislature did not authorize the treasurer to disallow payments based on the treasurer's opinion concerning whether the claims for payment were fraudulent, unlawful, or excessive. The treasurer argues that this authority is necessary "by virtue of the public trust which has been placed in her." The association argues that (1) the "treasurer is the final checkpoint through which payments are processed and is the last chance that a city or town has to assure the correct functioning of its financial operation" and (2) the treasurer is often in a position to have a broader over view of the city or town obligations through processing checks on a regular basis."

Contrary to these assertions, however, the right of a treasurer to disallow payments is not a prerequisite to a satisfactory administration of municipal finances. The applicable statutes demonstrate that the Legislature deemed the authority of the town accountant and the board of selectmen in that regard as adequate protection for the municipality. The Joint Special Committee on Municipal Finance, in recommending that "some official in every city and town of the State should be given the statutory authority to investigate every item of every bill if necessary, and to refuse to sanction payment of a bill if such course seems to him to be necessary," noted that in towns which have a town accountant, that official "has the

legal right . . . to ascertain whether or not the charges made . . . are irregular." House Doc. No. 1803, *supra* at 63. To ensure that at least some official has the right to challenge the lawfulness of a claim for payment, the committee suggested that the board of selectmen also be given that right. *Id.* The committee did not suggest that town treasurers either have or should have that authority.

We have already stated that a town treasurer's powers under G. L. c. 41, § 35, "are largely ministerial." *Graton* v. *Cambridge,* 259 Mass. 310, 314 (1927). Other authorities hold the same view. See 15 E. McQuillin, Municipal Corporations § 42.16 (3d rev. ed. 1970) ("If they have been properly presented for payment, it is generally the duty of the treasurer of a municipality to pay outstanding warrants, and it is no part of the duty of the treasurer to inquire into the legality of the consideration for which they were given"); *Redondo Beach* v. *DeLong,* 123 Cal. App. 3d 1035, 1042 (1981) (under city charter provisions for disbursing city monies, "[o]nce this procedure has been followed and the city council has approved payment the duty upon the city treasurer to disburse the funds is mandatory and not discretionary).".

The treasurer maintains that if she has no discretion to review the legality of a voucher presented to her, the requirement in G. L. c. 41, § 35, that "[e]very town treasurer shall give bond annually for the faithful performance of his duties" is rendered meaningless. The purpose of the bond, however, is to protect against unlawful appropriation of funds by a treasurer, or payments of funds in the absence of authorization of the proper municipal officials, as in *Lowell* v. *Massachusetts Bonding & Ins. Co.,* 304 Mass. 153 (1939). The association also asserts that the treasurer will be liable for payments made following the proper authorization by town officials if the treasurer believed such payments were unlawful and the payments turn out to be unlawful. In such a case, the association asserts the treasurer will not be protected by G. L. c. 41, § 43A, which requires the town to indemnify the treasurer only for liability based on acts "performed in good faith, without negligence, and in the belief that [she] was acting in the interest of the . . .

town." We disagree. A treasurer cannot be liable for making payments required by law,[6] as in the case of bills or payrolls approved by the town accountant and board of selectmen.

We conclude that the treasurer had no authority to withhold payment on the vouchers presented to her. She therefore had no standing to seek declaratory relief concerning the effect of G. L. c. 41, § 108, and G. L. c. 268A, § 21A, on the commissioners' right to be paid for their services,[7] and we do not reach her arguments with respect to those statutes. We reverse the judgment and remand the case to the Superior Court for entry of a judgment dismissing the complaint.

*So ordered.*

---

[6] The treasurer also argues that the power to disallow payments is necessary to allow her to comply with provisions of G. L. c. 44, § 31, as amended through St. 1982, c. 22, § 2, requiring that "[n]o department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department." We note that the power to enforce this section and to monitor expenses and appropriations has been delegated specifically to the town accountant. G. L. c. 41, § 58. Again, it is not the function of the town treasurer to make an independent determination of the propriety of a payment authorized by the board of selectmen and town accountant.

[7] These arguments were not properly raised by the treasurer, who had no authority to withhold payment on the vouchers. Other means exist to test these arguments, however. For example, we note the availability of a taxpayer suit under G. L. c. 40, § 53, to restrain illegal appropriations or expenditures by a town, if ten taxable inhabitants of the town believe the town is "about to raise or expend money or incur obligations purporting to bind said town . . . for any purpose or object or in any manner other than that for and in which such town . . . has the legal and constitutional right and power to raise or expend money or incur obligations."